Barry Spitzer appearing for appellants, Jacob Watson and Jane Watson. No appellant participating. Thank you. So I don't need to ask about any reservation of rights, Mr. Spitzer. You may commence. Thank you, Your Honor. Barry Spitzer representing the appellants. And, Your Honor, this case involves a motion for relief from stay that was brought by my clients to allow them to proceed in the state court regarding a specific performance order that they received pre-petition from the Tehama Superior Court here in California. The court denied... The specific performance order wasn't filed because there was another piece of it that was the monetary award. Is that correct? I'm sorry. It's kind of difficult to hear you. Can you... What did you... See, this is the problem we're having. Just continue. Okay. The specific performance order was related to a sale of real property that my clients purchased from the debtors, again, pre-petition. The court denied the motion, and we believe that there were two errors in that denial. First, the court found that the contract, the real estate sales contract, was executory. And secondly, the court found that the debtors rejected that contract under 11 U.S.C. 365. The state court order requiring specific performance is not an executory contract subject to rejection. The obligations of the debtor would no longer be determined by the contract, but in fact are defined and governed by the court order. Mr. Spitzer, let me ask you a question. This is to what Judge Taylor said earlier that you couldn't hear. Does it matter that the specific performance order wasn't a final order, that there were still things to be done in that litigation related to damages? No, I don't think so. The monetary portion of it is a separate portion, but the court order was very direct, very specific, that the debtors had to sign over the property to my clients, the appellants, within a period of time. Judge Clement seemed to think that this turned on the fact that it wasn't a final order. Well, it is a final order. The order of the monetary portion of it is a bifurcation of it, but the order itself was very specific regarding the property. The monetary damages were related to any money that was owed because of my clients having to spend money on the lawsuit in the superior court. So it had nothing to do with the property itself. It was the monetary damages, which in the request for relief, we conceded that we weren't going to go after any monetary damages based on the bankruptcy. So long as the bankruptcy was concluded and the debtors received a discharge, the appellants, the Watson brothers, were not going to proceed on the monetary damages. But it was clear that the order from the Tehama Superior Court was for the debtors to sign over the property within a period of time or the court would have the clerk of the court sign on their behalf. So it was very clear that that was a final order related to the property itself, not the monetary damages. So it was enforceable even though final judgment had not been entered? Well, it was enforceable by the terms of the order, yes. And Judge Clement used the Alexander case from the Ninth Circuit and said, oh, well, it was basically the very same case, but in the Alexander case, there was no specific performance order because the debtors filed bankruptcy on the day of or the eve of the case going to trial. Well, that's a huge difference. Starting with, in the Ninth Circuit, starting with Judge Gann's predecessor on the bench, Judge Curley, in 1994, in the Henry Glaze case, Judge Curley examined the very same issue and determined that the entry of judgment for the specific performance order is the critical point. So to say that the Alexander case is on all fours but for the specific performance order is clearly an outlier. The next case from the Ninth Circuit is from the Southern District of Judge Taylor's territory with Judge Hargrave stating in the In Re Tear Book case in 2002, the contract for purchase and sale of real property is no longer executory once the contract has been reduced to a judgment in a specific performance action. Then we go to Judge Brand's colleague, Judge Saltzman, in In Re Hertz, a 2015 case from the Central District of California, where in that case, the case did not even get to a judgment but was in the arbitration stage. In that case, Judge Saltzman found the contract was not executory even before a order was issued but it was in the arbitration stage. Then there was a case that I did not find until just recently, which was by Judge Martin, who was sitting in the Montana court, and he stated in a case very similar to this in In Re Farstad, that the debtors in that case relied on Alexander. The judge there stated the debtors' reliance upon Alexander and in another case from Idaho, In Re Young, is misplaced. Neither case involved a pre-petition decree of specific performance against the debtor's seller. Judge Myers found this is the crucial fact in the present case because pre-petition decree of specific performance transforms the debtor's obligations under the contract. Every court that has looked at it within the Ninth Circuit, or virtually every court that has looked at it within the Ninth Circuit and across the country, has found that very same thing. I hope your Honor has found my supplemental brief helpful. The N. Ray Baver case from the Southern District of Ohio, Western Division. Again, it's just a persuasive case, but that was from November 2, 2021. And in that case, Judge Buchanan went through essentially, it almost seemed as if she read my trial, my appellate brief, because she basically cited the very same cases that I did and went across the country. She cited the N. Ray Roxy Holmes case, which is a 1988 case from Massachusetts, in which the First Circuit Court of Appeals affirmed that same principle that once a specific performance order has been issued by a state court of competent jurisdiction, that takes it out of being allowed to be executory. So, we have cases, again, within the Ninth Circuit, across the country. We have the Baver case that I just stated. We have the N. Ray Brickhouse Properties case, a Utah case from June 2021, stating all the same things. The Ben case from New Jersey, from 2021, stating that the vast majority of case law agrees, once a state court orders specific performance, the debtors cannot reject that order as an executory contract. We have N. Ray Smith from the Eastern District of Texas, from 2001. We have N. Ray Bassett from Colorado, 1987. N. Ray Karbonik of Western District of Pennsylvania, 1987. All of these cases state the very same principle. The only case that the judge in the Baver case cited as an outlier is my case, the N. Ray Comfort case. It clearly is an outlier, because it says, although the reasoning is not entirely identical, the majority of decisions support that when a prepetition order for specific performance has been entered, following a debtor's default on contractual obligations, the parties no longer have future obligations under a contract, but instead have duties imposed by judicial command. That's from the Roxy case, which again, the First Circuit Court of Appeals affirmed. This court needs to set a standard for the Ninth Circuit, and there's no reason why the Ninth Circuit should be an outlier from the rest of the country. And, of course, each of your colleagues or former colleagues on the bench have found that very same thing. So it seems as if the vast majority of your colleagues, judges across the country feel that way. The other thing I don't want to shortchange is the fact that the debtors never listed this contract on Schedule G. And somehow the court found magically that it was rejected, even though it was never listed on Schedule G, it was never listed on the plan, the Chapter 13 plan. So we have an issue with that, too, in that how is a contract considered executory, one, and two, if it is executory, which clearly it isn't, but even if it is, how is it executed when it's never listed? How is that possible? So I didn't want to miss that one. I'm sorry, Judge Taylor. See if you can hear me now. I can. Oh, good, magically. Yeah. Didn't the judge – I mean, I am concerned about the due process point here of finding a contract executory when it wasn't listed as executory. Was there anything in that plan that would have put a reasonable person on notice that confirmation of a plan was the equivalent of a determination of the executory nature of that contract? Well, the plan itself, the Chapter 13 plan from the Eastern District of California does have a section that says if it's not listed here, then it's deemed rejected, which is fine. But it has to be listed somewhere. It has to be listed somewhere. You can't put a person on notice to say that you're rejecting a contract if it's never listed. It was listed in an amendment afterwards in June, late June and after the hearing. But up to the point of the hearing for motion for relief and most critically at the point when the court approved the plan without a hearing, how are my clients to be on any notice of anything? So, again, we have two – we believe two major issues here that the court should find were errors, unfortunately, in the lower court. Do you think the court in part was driven by sympathy for the debtors? Yes. I mean, that's just my – that's my feeling. And, you know, if you read the first – when you read the first paragraph of the opinion, I didn't have to read any more of it beyond that first paragraph to know where it was going. Yes. You know, the facts of the matter are that my client asked a realtor to go to the conference house approximately – well, less than 24 hours prior to a foreclosure sale. The conference had nothing planned. They didn't have a bankruptcy planned. They didn't have any way to stop the sale. They agreed that my client could buy the house, netting them approximately $25,000. My clients immediately stopped the foreclosure sale by forwarding the – over $18,000 to the foreclosing party to stop the sale. My client bent over backwards, gave them extra time, even allowed them to buy back the house. And every time that they were approached and agreed to buy back by the debtors, they went silent. So, an agreement was reached. My clients did everything they could to allow the conference to stay in the home. And even after receiving the specific performance order in October, later that month, the state court attorney and another attorney made an agreement. You do have a copy of the confirming letter. And they went silent. And then they filed bankruptcy. And here we are. I know I'm running down my time. I don't know if any of the other judges have any questions. I'd be happy to field them in the 30 seconds left. If not, I appreciate your time. And thank you very much. Thank you for your good argument. This will be under submission. Thank you, Judge Taylor. Thank you, Judge Brandon. Thank you, Judge Gant. Thank you. All right, let's call the next matter.
judges: TAYLOR, BRAND, GAN